Good morning. Good morning. Eris Vivani on behalf of the defendants. May it please the court, if I may, I'd like to reserve five minutes for rebuttal time. You're the lawyer for the children, right? No. Government. Government. Government. Okay, thanks. May it please the court, Eris Vivani on behalf of the defendants, your honors, we're here today because Congress has made it unambiguously clear that plaintiff's claims in this lawsuit must be raised exclusively in the Court of Appeals following exhaustion of two layers of administrative review in the immigration courts, not preemptively in the district court. Plaintiff's claims here challenging each of their individual hearings on the basis of fundamental fairness under the due process clause for an act for lack of appointed counsel at government expense are a textbook example of claims that arise from those proceedings. They would not exist but for those proceedings. They originate from those proceedings and they cannot exist absent those proceedings. They are quintessentially claims that arise from those proceedings and they must be channeled into the Court of Appeals. Neither of the exceptions that the courts have recognized in these types of cases, either that the issue is collateral to those proceedings or that having to exhaust administrative remedies would somehow create palpable and immediate irreparable injury are present in this case. So let me ask you, just to cut to the chase, if we agree with your interpretation of 1252 B. 9 as a jurisdiction channeling statute and therefore there's no claim to be made, how could a very young minor child who has no lawyer, who has a next of friend who can't act as a lawyer, in any realistic respect, be expected to raise the issue of counsel so that that could be ultimately reviewed in a petition for rehearing by a circuit court? Right. Well, I think there are a number of responses to that. At the outset, at this point now, there's been a class certified in this case. So this is not a case just about a very young child who may be absent and alone in these proceedings. This is about all minors under the age of 18. But Laplace was certified after this was sent up on appeal. So I'm asking about that child. Well, I'll say three things to that. One, the truly unaccompanied children, which I don't believe have been identified as any of the name plaintiffs present in this appeal, so those are those that are truly unaccompanied and in the custody. This is the key question. Please don't fight the hypothetical. Let's just imagine a seven-year-old and let's imagine the seven-year-old is all by himself or herself. What can she do? Yeah, answer the question. No, well, I'm trying to. I'm saying that truly unaccompanied child will be in the custody of... I know that you can say, well, she may be 17 and really smart, but how about sticking to the hypo? She'll be in the custody of Health and Human Services if she's truly unaccompanied and she will most likely have an attorney. Most likely, but she might not. Well, your position is she's not constitutionally required to be appointed an attorney by the government, correct? That's right. The government's position is that categorically, no. In a specific situation... She might. There might be circumstances... She might be lucky enough to get one of the immigration services or legal services, of course. So she might have an attorney, but let's say she doesn't. So here's what would happen in that situation, and we have to assume this happens because there's a presumption of regularity that the immigration judge is doing their jobs, obeying the law of the Ninth Circuit and the Supreme Court and the regulations applicable to them, will do what they're supposed to do under the law. So the safeguards, and these are a number of safeguards we've mentioned in our brief. An immigration judge has an obligation when an individual is pro se, including a child, and particularly a child, to develop the record to the benefit of that individual, to allow the child to make claims as to claims for relief, to prepare a record, to provide continuances, which, as I think it's clear from the supplemental documents we provide at the court, I know you haven't officially taken judicial notice of them, but if I may just refer to them with the court's permission, most of the plaintiffs now on this appeal have gotten continuances. Months upon months, none, zero, that have actually showed up for their immigration proceedings have actually been ordered to proceed on the merits without counsel, and none have been ordered removed. So the only actual evidence as to what happens with these individual children, including a hypothetical child, so there are a number of younger children here that have appeared with their mothers in immigration proceedings. They've not been ordered removed, and the safeguards appear to be working. The process appears to be working. None of them have been removed without counsel. And I think also, third point, it's instructive to look at this court's precedent on how claims are preserved in the context of pro se litigants. And Judge McEwen, I think you might be familiar with this case, you authored it, I might be mispronouncing it, but in that case the court indicated there's a pretty low threshold for preserving claims of ineffective assistance of counsel based on a lack of a continuance. And there has to be sufficient evidence of a knowing and considered waiver of a desire to have counsel. So less far from what we see in the evidentiary record we have here, you can review those claims assuming they've happened. So let me ask you, I understand that. That's assuming you've got a really smart 7-year-old who says, I'd like a continuance, please, because I need a lawyer. But let's also note that that might necessarily happen. Realistically, if a claim comes up through the process, and it's not been exhausted because an unaccompanied minor or a minor was not prescient enough to ask for a lawyer, would you agree that exhaustion would not be required because the administrative agency doesn't actually have the capacity to rule on that constitutional right to counsel? And therefore, if it came up on a petition for review to this or another circuit court, exhaustion would not be required? No, I disagree with that, and here's why. So it's true. The Board of Immigration Appeals is not institutionally permitted or capable of deciding whether 8 U.S.C. 1362 is unconstitutional. All the parties agree on that. That's conceded. But that doesn't mean the Board is institutionally incapable of deciding whether the hearing below was fundamentally fair. So just an example, there's a recent Board decision from 2011, INRI MAM, in which the Board set out what a fundamentally fair hearing in the Board's view, what sort of safeguards must exist for mentally incompetent adults who are detained during their removal proceedings. That's exactly what could happen if these children are allowed to proceed with their proceedings before the Board and ultimately come to the Court of Appeals. And I think here, there seems to be, in the briefing... So if that, if your argument is true, a class of children would never have a judicial remedy for a declaratory judgment that counsel is required? I don't know about any class of children. I think not this class of children that are 18 and under. Hypothetically, perhaps a class of 3-year-olds, but that's not this case. This case is 18 and under. Okay, so let's assume that, having heard that, they leave here today and they go down to the district court and they file on behalf of a class of 3- to 5-year-olds. What then would be the legal avenue for them to pursue that claim? Well, the government's position would be the same in that case. I would have to say that they would... So, in other words, it really wouldn't matter if they... Well, no, if they find that individual, and, I mean, this case has been going on for two years. We don't have that individual in this case. That case would be, that individual would be in this case if he or she is in the Ninth Circuit. If they were to find that individual, the government's position would be, represent the individual in removal proceedings. What happens as a practical matter? We all get so many of these cases, and it's obvious they are not traditional adversary proceedings where you're on your own. The IJ is required to and does do all sorts of things to safeguard the fairness of the proceedings and to elicit evidence. They often tell the asylum seeker or whoever it is what evidence they should bring into court after continuance. And that's a lot of your argument, that that general duty to be fair is as much as you can infer. What I want to know is, what could happen? Children usually start talking between one and a half and two and a half, and nobody but their parents can understand them until they're maybe four or five. What happens to those little kids? Frequently not there after. So, sorry, what happens when they're... When they're in immigration court? Well, again, we're back to the hypothetical five-year-old that appears absent their parents, absent a sponsor, absent a guardian, and we don't have that person that we know of in this case. I didn't force that hypo on you this time. I want to know what really happens. Well, we can see what's happened here when they have appeared with their mothers as the representative. The cases have been continued. The cases have been continued for months on end to allow them to look for attorneys. I know there are all these. As a practical matter, a lot of these, I think right now it's penniless Guatemalans showing up, as far as I can tell from the cases. Yeah, they're primarily from Guatemala, El Salvador. So they can't really afford an attorney. They may get one of these notarios who's worse than an attorney, but I know there are all sorts of charities that provide counsel. Are they... Did they provide counsel for these children as a routine matter? Not for all of them, which is why we're here, but there are government programs through Health and Human Services. There's Provide Pro Bono for the truly unaccompanied minors who have no one. There are non-profits. Okay, so what's up there is... substantial efforts to try to bridge this gap. But for unaccompanied minors, does the government program provide counsel for all of them? It does not. And I think here, if I may read the statute that's at issue here, the statute that you would have to find facially unconstitutional for this claim really to go forward. Well, we don't have to... We have to figure out if there's jurisdiction. Of course, we're now talking kind of about merits, but the statute relates to jurisdiction. So let me ask you another question. If a minor had a lawyer, but not a government-appointed and paid-for lawyer in an administrative proceeding, but made the argument that the child is entitled to government-paid lawyer, would that child have standing to raise the kind of question that we have here? Absolutely. Because even if it can't be raised through the administrative channels, which again, the Board of Immigration Appeals cannot declare 1362 unconstitutional. But, and here I think it's instructive to look at the claim channeling cases we cited in our second brief, Elgin, Shalala, and Chadha also, which I'll get to in a minute, the Ninth Circuit decision, those claims can be presented, and even if not addressed at the administrative level, preserved for appeal to the Court of Appeals. So I think... So it could be preserved for an appeal even if the child had a lawyer in the administrative process. Well, there's two claims there. So there's a claim, I have a lawyer, in your hypothetical, but I think I shouldn't have to pay for this lawyer, I should get it for free. That claim can be made by this lawyer. And then there's a claim, well, if the child is alone, I shouldn't have to, my hearing is fundamentally fair if I don't even have a lawyer. That can also be presented in that proceeding. The IJ has to ask, do you want a lawyer? Please, here are the resources here. Both those claims can be preserved. And then Chadha, if I may for a minute, we didn't cite the Ninth Circuit Chadha case, which is a Justice Kennedy will then judge Kennedy decision on behalf of a unanimous panel. Chadha was the unicameral veto case wherein Congress gave itself the authority to veto the Attorney General's decision to suspend deportation. Chadha raised a constitutional challenge to that on separation of powers issues, nothing to do with removal proceedings. And actually the House of Representatives came in and said, no, no, no, no, no, this can't be raised in the Court of Appeals, it has to be a district court litigation, it has nothing to do with this proceeding. And Justice Kennedy, in that opinion, indicated the whole purpose of the immigration review process, these jurisdictional provisions, which are similar in 1980 to now, but for now they're even more stringent in the government's view, is to have one single streamlined case to raise all these issues. And in that case, the Court, Justice Kennedy citing legislative history going back to 1961, indicates we see no purpose to have two bifurcated tracks on this. The claim can be and has been and should be addressed in the Court of Appeals. Counsel, I guess what troubles me about the government's position on this is the practicality. I respect the fact that many efforts have been made to help individual children, particularly unaccompanied minors and the like. The reality is that this is a very complicated area of the law. We see many lawyers that appear before us that have no idea what they're doing, let alone the children who are tiny or teenagers or whatever. My understanding of the government's position is, in effect, that when 1252b-9 was enacted, Congress reacted to the McNary decision. It tracked the language exactly. It made an institutional decision that was going to channel everything. The language is clear. There's no ambiguity. If there's a problem here, you need to take it up with Congress. Is that, in effect, what the government's position is? Well, I think Congress has made clear on the rights to counsel issue. I don't know what they've done. I'm just saying that as things change, people become more sensitive to this issue. I mean, it's a real practical problem. We do not disagree. But are you saying the district court has no jurisdiction because of the statute that I just referred to? We may recognize that there are some individual problems, but you can't get around the statute arising from it. It's not ambiguous. If we agree with you, then we're saying, Congress, you've got to help here because we have no authority to do this. Is that correct? Yes, I think part of this is a political problem. Congress hasn't authorized the funds. Congress has said in three separate statutes, no lawyer, as recently as 2008, and again also in 1996, the same time they added 1252b-9 and 1252d, the current claim-channeling provisions. The 8 U.S.C. 1229a-b-4a, the provision that says no government expense there as well, which repeats 1362, which was put in the provisions in 1952. So it's spoken on this issue three times. So that's a political problem. Facially, Congress has spoken. And for a lot of the members of the class, these are non-admitted alien minors at the border, whatever Congress provides them is their due process. If that's the position of the government, then realistically you're saying that while there may be individuals who are lucky enough to have pro bono counsel and the like, that in effect they're out of luck because they cannot defend themselves. I mean, I've been on this court 10 years, and I must confess that among the most complicated of all of the laws that I deal with is the immigration statute. Amendment after amendment after amendment after amendment construing this and that and the other. It is an absolute hodgepodge of difficult and sometimes conflicting laws. I just don't see how realistically anybody can say that a child or a mentally deficient person or a mentally ill person can possibly defend themselves under this. That's why my question was, is the government realistically saying, hey, we may not like it, but this is what Congress has said, and that's what we're stuck with. I think, to be fair to my employer, we're doing the best we can with a bad draw. That's all of you. Yeah, I mean, again, there's the safeguards, there's the pot of money that has been appropriated for pro bono counsel for the Truliano Company minors. There's procedures and guidelines issued to the immigration judges by the Executive Office of Immigration Review what to do in these situations. It's not simply they've washed their hands of it and said, good luck. They're doing the best they can with the situation. Is it a perfect system? Obviously not. And, of course, that is what we've all talked about. You're doing the best you can. Your opposing counsel has just said, hey, you know, constitutionally this just can't be right. These people need due process. They can't possibly get it here, so we need to construe the statute in a way that may be a bit unusual. Is that the only way this gets resolved? No, this claim can be raised through the petition for review process. I mean, we cited a case in our briefing raised by one of the co-counsel plaintiffs we now have in 2004 where an unaccompanied minor, a juvenile, 14, not your 5-year-old, but a 14-year-old, raised this claim and said, I want a lawyer. He said, I can't appoint you a lawyer, but I'll give you time to find a lawyer. The board affirmed it in a summary decision. He got counsel at that point because, I mean, what counsel wouldn't jump at the opportunity to defend that case and raise that issue before the Court of Appeals? Presenting that claim, it mooted out for whatever reason. It was never decided. But in that case, they argued to this court. This court routinely decides these types of questions under a Matthews v. Eldridge analysis. And so it seems there's been a bit of a role reversal. Now the government is taking that position and the plaintiff's bar is taking the position. It must be in district court. I mean, I understand where the plaintiffs are coming from. If roles were reversed again, you want to get this resolved in a class action. It's the quickest and simplest and easiest way. But Congress has said, here, in this context, you cannot do that. There's no injunctive remedy and there's no class action remedy. It's a case-by-case, individualized PFR process. Well, you'd think then the government would say, it's such an unusual situation, going back to my question, you don't really need to exhaust this below. You could raise it on a PFR because it may be practically impossible to raise, particularly if you're an unaccompanied minor. Absolutely. And exhaustion could be excused, correct? I think there's a presentment requirement.  and present yourself with all the claims in your bundle of claims. You may not be able to adjudicate that particular constitutional claim at the board because they can't decide whether 1362 is constitutional, but then that would exhaust their remedy. They would be able to raise that claim in the Court of Appeals. That is the government's position, emphatically so, that the Court of Appeals is institutionally capable, institutionally exclusively capable, under the statute, to decide that question. Well, I think you've kind of set it up, too. You said you understand why this, in an ideal world, would be set up in a class action situation and we'd get an answer to the question, correct? Did I hear you say that? It would be quicker, but it's certainly the case. I know I like it. Let me caveat. Sorry, I didn't mean to interrupt. Let me caveat. The same result will happen in a PFR. This Court does on PFRs decide general due process questions, not just individualized questions. So cases like Flores, notice to minors, decided on a categorical basis in one PFR with one plaintiff. Morales-Izquierdo are the reinstatement provisions of the Constitution. So if that's the case, why doesn't the government work with plaintiffs' counsel to get a test case that doesn't fall in the cracks of all this jurisdictional morass so that you can get an answer to the question? One side may not like the answer, might not turn out in favor of the minors, might not turn out in favor of the government, but why doesn't the government just work to get this test case up to some court? I will say this. Plaintiffs' counsel and myself and the rest of the counsel on both sides have not had such a conversation. But you could. I don't actually understand why you do need that. In my practice, I recall a few repetitive class actions, or not repetitive class actions, repetitive products liability actions where a lot of different people are complaining about the same defect in the same product and suffering various kinds of damages. And for the particular product I'm thinking of, a friend of mine was the lawyer for a bunch of the plaintiffs. There never was a class action, nor was there a need for one. They litigated three or four individual cases, or maybe it was just two or three, and then all the others settled because there were different juries, different jurisdictions, and everybody could see how they were coming out, and so it was pretty easy to reach a settlement. What do you need a class action for? I think that's exactly what could happen here. What I'm saying, you don't need a class action, but you need some kind of cooperation with the plaintiffs so that you can get the thing through the system, and the government doesn't then keep raising jurisdictional exhaustion and other procedural bars. Plaintiffs, in this case, have taken the position, and it's their argument, I won't make it for them, but they can't do that because they'll move the claims out. The government's position is those claims will not be mooted out. They're preserved in the record, and the court appeals can raise them, but the ball is sort of in the plaintiff's attorney's court on that issue. We can't force them to pursue one channel versus the other until a court tells us which channel is the appropriate channel. The mootness is because of the age factor, is that right? The age factor, I believe, is their argument, that they'll turn 18 eventually and won't have the claim to make, although the government's position is that claim is preserved. So if the child suffered prejudice as a result of the absence of government-appointed counsel during the proceedings, that claim is alive, no matter how old the child is. If you had a 10-year-old that was going through the system and everybody agreed this is going to be the test case, the child raises the issue, comes up through the system, gets to our court. If our court said, you know, this just doesn't work this way, you really need counsel, then you don't have the jurisdictional issue. We're stuck with this statute, but then the issue could be fairly raised. As we seem to all be saying, maybe you ought to talk and see if maybe that could be worked if this doesn't work out in any other way. But it's a problem. It's a real problem. My time's a little bit over, but if I may just respond to that. We're doing the best we can here with what we've got to work with. But I think that what you've just described, Judge Smith, is exactly how the government envisions this happening. We have a blueprint from prior cases from the Ninth Circuit and the Supreme Court. We have dicta from the Ruiz decision from 1986, admittedly in the EASA context, that yes, the statute seems to be a valid act of Congress, but in the applied situation, there could be circumstances where counsel must be appointed at government expense. But the only way to really litigate that is to see how the proceeding plays out in the removal process and see was the fundamental fairness so fundamentally lacking that a lawyer was the only solution. And that is quintessentially the PFR process. One thing that is kind of striking here is that I appreciate your nod to the immigration judges and, of course, the process and their manual that they have to follow, but it's kind of interesting that there was an amicus here filed by former immigration judges saying that the volume is so overwhelming and the pressures are so enormous given the numbers and the nature of these cases that it's not realistic to expect that you're going to get those kind of safeguards. What's your response to that? Well, those are three judges admittedly, and that's basically a fact depending from their experiences. It's not in the record here. What is in the record, all that we have here, is what's happened to the individual plaintiffs in this case thus far. We don't know what happens to the hypothetical class. I think all of us really hate having pro se cases, even if the pro ses are college professors. It's just more work for the court if you have pro ses. I mean, it's interesting you raised the pro se point, if I may, and I don't know that I want to answer. Why don't we answer the question, and then we'll turn to the plaintiffs. So, again, in this case, all that we know, the response to the amicus, that's an abstract observation and their opinion based on their experiences. It's the same sort of stuff that the plaintiffs bring up. It's just general statistics. You're more likely to be successful in a proceeding if you have a lawyer than if you don't. Well, that's just common sense. You'll be more successful in any proceeding. I mean, lawyers will say that. Maybe the public won't. But I think we can all agree that more often than not, you'll do better off with a lawyer. But there are reasons for why that is that are not really here right now. To your question, all that we've seen in the record here, continuances have been granted. Questions have been asked. The IJs have said, are you here alone? Where are you from? Who did you come here with today? Do you want a lawyer? And they've done this, from what we can tell from the transcripts and language, that is sensitive to the fact these are children who don't speak the native language, who have been here briefly, that just are alone, or with people they don't know as well as their parents. So all that we have in the record suggests that the IJ's concerns are overblown. Just one practical question before you go. In the record, there's a reverend who's done yeoman service, acting as, in effect, next of friend to a number of the children. But in an immigration proceeding, does that supervising adult or next of friend, they don't have any status really to represent the child. Is that correct? Well, they can speak on the child's behalf. They can't develop an attorney-client relationship. And they can't practice law without a license, of course. Right, but they can speak on the child's behalf, and that is one of the things, actually, that when Health and Human Services gives the child to a sponsor, they agree to do, to speak on the child's behalf, to bring the child to court, to ensure the child shows up, to give the government information as to venue changes if they change their address, and to make the best efforts to become that child's guardian. Okay, thank you. I think I have your answer. Thank you. I appreciate it. Thank you. Thank you. Good morning, Your Honors. Ahilan Arlanandam for the plaintiffs, and I would like to reserve three minutes for rebuttal on the cross-appeal issues. It's your choice. Thank you, Your Honor. I mean, just to let you know, I think that's well-briefed, but it's your choice. Thank you, Your Honor. The issue in this appeal is really about whether thousands of unrepresented children will ever get their day in court. Just one bite at the apple. I thought that wasn't quite the question. I thought the question was whether, under the statute, they could get their day in court now in district court or later in the circuit court. Well, that is the question, Your Honor, because they cannot get their day in court through the circuit court. And the basic factual premise underlying not just McNary, but also all of the cases on which the government relies, Elgin, Shalala, the circuit court cases they cite in their 28-J letter, all of them require that there be a meaningful judicial review available for the claim that is to be channeled. Why isn't it meaningful if it comes to us on a petition for review after an order of removal? We treat the absence, perhaps, of a demand for free counsel below as not waived because it wasn't intentionally and knowingly relinquished because a small child would not have the capability of intentionally and knowingly relinquishing it. That still presumes that it even gets here in the vast majority. I can't imagine that the advocacy groups that are here today coming up from the district court wouldn't be just as capable and energetic in getting a petition for review to the circuit court. Two problems with that, Your Honor. First, that doesn't do any good for all of the children whose cases will be pending and will never get their day in court while that happens. You win two or three or four cases, get one or two ringing opinions, and you've won, and it goes national. No, Your Honor. 765 children have been ordered deported just within the circuit, just under their narrow definition of unaccompanied children since we filed this case. That is no relief for those people. That's the argument that's made in this case, the due process argument, on behalf of some children who did go through the channeled review process. No, and I think that goes to, we haven't, and I think that goes to Judge McEwen's question. So why not do that? Then we'd be representing them, Your Honor, and a represented child cannot raise a claim for appointed counsel. Government said they could because, and that's what I was waiting to hear, whether the government agreed with me or not. If your claim is not only am I entitled to a lawyer, but I'm entitled to a lawyer at government expense, they're saying that that is a separate claim and it could be brought. Well, first of all, Your Honor, our claim is that the fair hearing requirement and the due process clause require counsel. Well, for that claim, you're in just as bad shape doing it this way as that way because right now all the children in your class have counsel, and I'm looking right at them. No, we represent them in the district court action. We don't represent them in the removal proceedings. Are they all unrepresented in the? They are all unrepresented in the removal proceedings. But what about the case of Guzman Heredia, which Northwood's Immigrant Rights Project brought? It was an unaccompanied minor. They filed a petition for a hearing, and then for whatever reason it became moot. Yes, so I think that last point is very important. It became moot, and that's one case in 2004. There have been 39,000 children unrepresented, ordered deported in that time period. I can't believe 39,000 children that you can't find a petition for review to bring to some circuit court and see if the court would excuse exhaustion because it was impractical to exhaust and say that even if the child had a lawyer in some respects, it didn't have a paid-for lawyer, and therefore tee up the question. Well, Your Honor, this was a facial challenge to jurisdiction brought by the government. Right. And all of this discussion that we're having, there are well-pled allegations, plausible allegations in the complaint, and also now extensive record evidence experts that we sort of pled into the complaint on these questions. So this hypothetical child that could come. That doesn't bear on the law at all. You're just saying, well, yeah, the law says channel the appeals through removal proceedings. We did it some other way, but we've given you a good record and briefs and everything, so just ignore the law and go with our scheme. No, Your Honor, it's not a record on the merits I'm talking about. I'm talking all of the claim channeling cases require that meaningful judicial review be available for the claim that is being channeled. What you have to do is find a few five-year-olds and this vast number of children and represent them from the get-go. Your Honor, we can't. You say that would moot it out because you're representing them. It would. You're representing them right now. You have a court ruling to that effect? If that would moot it out, then why isn't this moot? You're representing them right now. No, because we don't represent them in the Immigration Court. That is the reason why it's not mooted. We do not represent them in the Immigration Court. There are two different capacities, but have you ever had a court that said because a child was represented, not by a government-paid lawyer, that that would moot a claim under the U.S. Constitution for due process that the child is entitled to a government-paid lawyer in immigration proceedings? The only thing I can think of for that claim would be a claim for compensation. My question is, do you have a court ruling to that effect? I mean, I don't. I'm not aware of a represented child who brought a claim and said, I deserve a lawyer, and I really cannot comprehend how that claim would work. If you have a lawyer, you have no claim for representation. Now, you may have a claim for compensation, but the Supreme Court held in Ardestani that there is no right to fees in Immigration Court. So I don't understand what the claim is. If you're saying that there's only a moot claim for representation, once there's representation, then the moment that you got a class certified in district court, you mooted out your own case, and the district court has no choice but to dismiss the case. No, we didn't, Your Honor, because there is a fundamental difference between bringing a case in district court, seeking counsel in the removal proceeding, and representing the people in the removal proceeding. And that's consistent with a number of cases from this court going back well over a decade, class actions in district court challenging procedural deficiencies in the immigration process, all the way back El Rescate about interpreters, Walters about the deportation notices for fraud cases, and all of those cases the people are represented in the district court. But the question is whether they can get a fair hearing over in the Immigration Court. That gets to the statute then, which is what I would really like to get to here. I must tell you, I am moved by the plight of these children. I really am. But I'm really struggling with this statute because it appears to me that Congress exactly tracked the channeling language referred to in McNary. And they said, you know, if Congress really wants to do this, then that's what they've got to do. That's exactly what they did five years later. And if you look at the language, 1252B9, it indicates that all questions of law, in fact, including interpretation and application of constitutional and statutory provisions arising from any action or proceeding brought to removal in the United States and so on. But that's really, you know, you say it's ambiguous because it's arising from. I find that to be a real stretch. How could Congress have worded this in a way that would not be subject to your interpretation? What could they have possibly said? Well, in Aguilar, the First Circuit decision on the subject, they said they could have used the word relating to, you know, and they distinguish arising from and relating to. Arising from and relating to, is that different? Yes, and they cite a Fifth Circuit case called Humphreys, which describes also arising from. It's also related to arising under, the 1331. Related to would solve your problem. If it had said that, you wouldn't be bringing this claim. It would solve the statutory problem, right? And the other underlying issue, McNary's Canon of Construction, and remember the wording is only the last of several issues in McNary, is about the constitutional problem with denying a day in court to people with a colorable legal claim. But this statute talks about constitutional claims. It doesn't just limit. I understand that McNary was a statutory construction, but this language specifically refers to constitutional challenges. It does, Your Honor. How do I get around that fact? I mean, it's not ambiguous to me. You're telling me that it is ambiguous. I want to know why it is. Sure, Your Honor. Just look at the Ninth Circuit cases and the First Circuit decision in Aguilar, if you like, interpreting that exact statute. So Singh v. Gonzales is a decision of this court interpreting that statute, finding that there is habeas jurisdiction available for a district court challenge. In a very, very, very narrow circumstance under that case. And in that case, you actually had completed the administrative process. And then, of course, you had a problem with the counsel not filing the petition for rehearing. So it would have stripped him of any meaningful review. Yes, exactly, Your Honor. But the difference, the cases you cite, Elgin and others, that's where you've actually stripped all federal court jurisdiction. And you don't have that here. Here you have the possibility. No, Your Honor. Go ahead and answer. I haven't finished my question. No, no, no. I'm sorry, Your Honor. Please, please. So here . . . I mean, I don't know how you . . . You want to have the answer from Elgin, but under a different statutory construct. Because here, Congress actually didn't strip all jurisdiction. They basically said, we're going to put it all in one pot. And here's where you get your judicial review. So that's very different than these other cases, isn't it? Respectfully, Your Honor, and I apologize for jumping the gun, I don't think it's different. Elgin, Shalala, also McNary and this Court's decision in Singh and Aguilar, they're all channeling cases. None of those are about stripping. And in the stripping cases, Walters v. Reno with respect to 1252G is a stripping case. But all of these others are situations where the courts are saying, we've created one judicial review scheme for administrative action, and we're channeling provisions there. And these are people in Elgin. It's a sex discrimination challenge to the draft requirement for a federal election. In Shalala, it's about nursing homes, something. But regardless of the context, these are all situations where people are saying, we should be allowed to go outside of the normal channeling scheme. And the question the courts ask, the government has it half right. The first question they ask is, what's the statutory intent here? Is it fairly discernible? But if you look at all of the cases, they're then asking a second question, which is, is meaningful judicial review available? And, Your Honor, Judge Smith, you talked about the practical problem, right? McNary says, is it tantamount or is it the practical equivalent of a denial of meaningful review for most people in the class? How do we cabin this, counsel? Let's just say arguendo that you're correct. Wouldn't your analysis likewise apply to the mentally infirm, people with low IQs, or people, frankly, who come from other cultures who are not used to this adversarial legal system we have who think this whole thing is kind of like what? They don't understand the system. Is it the fact that they're young, or is it the fact that they simply don't understand the proceeding and cannot assert the remedies and defenses that they're entitled to? It is the fact that there are unique capacity deficits about children. This is extremely narrow, extremely rare and narrow. I get that, but if you're right, won't the next lawsuit be, you know, I've got a lot of people here who have a very low IQ. They don't understand this, and based upon our ruling in this case, you need to give them counsel as well. Your Honor, that lawsuit we actually brought already, and the government didn't even appeal it. We won it on 1252b9 in the district court. It's a Franco litigation for people with serious mental disorders, and it is true. We asserted there, just as here, that those people cannot file a petition for review. We have a similar record. There were no published cases anywhere by pro se people with serious mental disorders. Just like here, there's not a single published petition for review in any court. It's a lack of an ability to represent yourself and help yourself, and that's true, frankly, in most of our civil system, both federal and state. I mean, most people have no idea how the bankruptcy system works. They have no idea how even landlord-tenant works. But, Your Honor, that's a merits question, right? The merits question can be decided entirely separately. I want to see where this is going to understand the due process argument. How big is the due process argument here? It seems like it's huge. No, it is very narrow, Your Honor. First of all, as the government cited in their opening brief, there are lots of adult pro se petitions for review. There are lots of them. So on the question, just as a general matter, can adults, Your Honor was asking about this as well, can adults file pro se petitions for review? We know the answer to that is yes, because they do, and you all see them in court. And in contrast, you don't see petitions for review filed by children. That is not an accident. Let me ask you, just I know you've thrown a lot of statistics at us in different aspects. Are there statistics about, other than the case in which the Immigrants' Right Project represented the child, are there any pro se children PFRs that you've identified? No, Your Honor, and this is so important when we're thinking about this is a facial challenge to jurisdiction. Are your groups prohibited by their granting? Whoever gives them grants or from their own structures from representing individuals? Well, let me answer both the questions, Your Honor. It's just incomprehensible to me that you don't take a few test cases through the removal proceedings, but that would make it comprehensible. Well, no, we're not, and we do represent children. We can't represent all of them or even anything close to all of them. Of course you can't represent all of them. No lawyer or agency of lawyers can do them all, but it's so incomprehensible to me that you wouldn't avoid this difficult jurisdictional issue by going the easy route that Congress has provided for. But I'm wondering if for some reason you just don't represent children individually. No, Your Honor, if we could get the claim heard that way, we absolutely would have done it. It is impossible. If you have a represented child in the immigration court, that child has no standing to raise a claim for appointed counsel. Couldn't one of these sponsors say, I think this child needs a lawyer? And then you've raised the question, and then you can take it up. So on that sort of possibility, we have declarations in the record, which we then pled into the complaint. Experienced legal service providers representing children. David Thronson, for 20 years all he's done is represented children. The head of the Legal Aid Society who represents children in New York, they say they've never seen it. Never seen it. That's not the question. Could it be an amicus in the removal proceeding? You have access to people and the sponsors. You've talked about them in your pleadings. They could not actually say, we have an unaccompanied minor here. Do they get a lawyer? In the immigration court, the judge would say, I'm sorry, I can give you a free legal list, but I can't appoint you counsel. So now the issue is raised. Now someone has to file an appeal to the board. Right. Somebody has to do that. Someone has to do that. Someone has the ACLU who's been working with these group of individuals who are not represented right now in immigration court, but are represented in a broader class claim. Well, if we filed that person's appeal to the board and took the case up that way, that is essentially what happened once in 2004 in Guzman, Arabia, and that case mooted out. And my strong suspicion from the treatment of our named plaintiffs in this case and also from 15 years of litigating against the federal government in the immigration context and this sort of thing is that those cases would moot out. That is what would happen. The cases would moot out. If you could get the cooperation of the government, though, in the sense of not a setup, but basically to have a sample case. I mean, if McCulloch v. Maryland, which was a total setup, is controlling law, why can't you reach some kind of an agreement to have a sample case that gets around this jurisdictional issue and then have a court of appeal, ours or any other, rule on it, and then you've got your case. You don't have a jurisdictional issue. And, you know, if the court finds that there is enough of a due process problem that children in this situation are entitled to counsel, then you've got your precedent. Go from there. All I would say is, first, that would be far too late for all of the children who two years ago. I respect that. And that's very sad. Right. And second, Your Honor, whether or not that's hypothetically possible, and I'm very skeptical the government would agree to do this, they fight every jurisdictional hurdle from day one in every class action. Every one of these children, the ones that are specifically named, no matter what we do, this case will be fought beyond that and they will be mooted out. So, unfortunately, these particular children, it's an unfortunate thing, maybe the 3-year-old not, but the reality is at some point you've got to have it. They will moot out, and I hope I'll have some time on the cross-appeal to answer that question because I don't think it's too late for all those children, not if we win certain issues on the cross-appeal, but they will moot out because they will win their cases on the merits or the government will take other steps to. . . Well, for those 11 children, Your Honor. I know, but we're talking about other children who are not going to necessarily win their cases on the merits. So this is like Scott's four warnings where it's important to lose the case on the merits in order to. . . No, that's not what we want. We want for the 765 children we can't represent who have already been ordered deported for them to get a day in court, too, and the other hundreds more who will be deported while we're waiting for this test case, which has never happened. Daily, Department of Homeland Security is issuing deportation orders, correct? Yes. So where are the immigration lawyers there to say, let's file a petition for rehearing or a petition for review to a circuit court on these? They're dramatically overstretched representing other children. Slightly less than half the children are represented. Well, we're excellent lawyers. Why don't you do it? Plus, you have word processors that will substitute names. . . No, we wouldn't want to suggest that you engage in some practices that we see from other immigration lawyers. And on that subject, Your Honor, there's actually evidence in the record and put into the complaint about the limits of Friends of Court. Friends of Courts are not supposed to take any step. They're not supposed to make a motion. They're not supposed to file, reserve appeal, anything like that for children. They can talk, though, can't they? They could say, Your Honor, this kid doesn't have a lawyer. Well, I think the records make that clear already. The question is, how do you then get that to appeal? And if somebody files a PFR on it. Right, and then . . . As I said, Your Honor, there are facts put in the complaint. Through the route that's right here in the statute at 1252b9. Your Honor, all I can say is that there are facts put in the complaint. It's a facial challenge to jurisdiction, but that doesn't work. And the government has not proved that it works. And it has to work for most. In Shalala, the court said . . . It doesn't work. I mean, here it is. The statute says just how to get it. As I said, I think that this is a threshold question, which is why we've spent so much time on it. If you want to take a minute to talk about the statutory question, please do that. And the distinguishing . . . That's your other counsel, too. Or is somebody else going to be doing that? No, I'll be doing that. But, sure, if Your Honor would indulge me, I'll take a minute to talk about that. I'm just saying it's well briefed, and there are some related contingencies. In a moment, briefly, I would say two threshold points. Obviously, as Judge Smith has noted, there's a very important constitutional problem underneath here. So I do think we have a thumb on the scale when we interpret the statute because we're interpreting to avoid that constitutional problem that is now in heavy litigation in the district court. Second, the government doesn't have an answer for our statutory violation, which is that the fair hearing requirement means that, for example, 11-year-old EGC . . . You want a hypothetical for someone who's alone. His parents are gone. He's in immigration court. And he has a right. It's not the right for the judge to cross-examine, the impartial judge to present evidence. It's his right. He has a right to testify, present evidence, cross-examine witnesses, a reasonable opportunity to do that under the statute. And I have not yet heard from the government any explanation of how the existing system vindicates his right to actually accomplish any of those tasks. Now, they focus a lot. They say that the statute says a right to counsel of choice at no expense to the government. Of course, it does say that. But as we laid out in the briefs, there is a reason why that provision is there, completely unrelated to barring counsel, paid counsel. The reason why that is there is because they used to, for many years, bar lawyers from coming into exclusion proceedings, and they still bar lawyers from coming into border inspection proceedings. And so the purpose of those provisions is to make clear that in a deportation proceeding, now a removal proceeding, you cannot bar the lawyer. The lawyer has a right to come in. So if you have a lawyer paid, you can bring that lawyer in. And if it really meant at no expense, like you can't pay a lawyer. It doesn't just say that paid lawyers can come in. It says lawyers can come in, doesn't it? Yeah, it says there's a right to counsel, the privilege of counsel at no expense to the government. It doesn't say any lawyer can come in and represent the kid. Exactly. And that is the purpose of the statute. That is exactly what the statute is there for. And the government's reading is really hard to square with the fact that all three agencies that we are suing here have recognized that you can pay government counsel in immigration court. As he was saying, the Department of Justice does it through a program. Health and Human Services does it. Millions of dollars they spend paying for some, but not all, of the children in removal proceedings. And the DHS General Counsel wrote a memo that advocated that view. So their argument is, and this is important, Your Honor, because the whole claim stripping provision and all that assumes that we are enjoining the statute in some way. So if we win the argument that, in fact, there's no need to enjoin the statute in order to pay for counsel, then the jurisdictional picture looks very different. But our argument is that when the government is already paying for counsel, it obviously can't be true that the immigration laws bar the government from paying for counsel. Let me ask you a very practical question, and I say this with regret. If you lose on the jurisdictional issue because we feel the statute is unambiguous, what's the next step? Again, I empathize with the issue. I wish I were a member of Congress. No way. But if I were, I would change the law. But I have no control over that. But what do you do next to vindicate this very, if you will, righteous position? You've got a good position. We have this law that we have to deal with. What do you do? Your Honor, honestly, if we brought one of these cases, as the court has suggested, let's say we brought 17-year-old FLB's case. He's been told to submit it in a file and application. Even Spanish is his second language. He has no chance of being able to do that. If we somehow manage to get that here, and even if this court ruled on that question, that would be interpreted to mean that a person who doesn't even speak Spanish and who has no people in their life at all and on these particular facts is entitled to appointed counsel. That's why you do two or three or four of them. Your Honor, we will spend years trying and failing to get that claim presented in this court. Thank you. I think we have your argument in mind. Thank you. We gave you quite extensive time, but I'm going to give you some rebuttal time. So I'll give you three minutes for everything. Thank you. Brief. Just really a few points, really, really quickly on the statutory point. Plaintiffs talk about a statute passed in 1952, but there are two other statutes at issue here. There's a statute issued in 1996 saying the same thing. It's 1362, no counsel of government expense, and there's the TVPRA in 2008. So really to reach their claims, as they're asking you to do, you would have to facially find those statutes on constitutional supply to all children. Congress grappled with this very issue in 2008. They went back and forth on this. The TVPRA was passed unanimously by both houses of Congress on this very issue. So you have Congress speaking to the issue in 2008. On a second point, so we're now on the Third Amendment complaint in district court. There's been a complaint, First Amendment complaint, Second Amendment complaint, Third Amendment complaint. It's been two years. I mean, we talked at this argument a lot about this hypothetical 5-year-old, but if this hypothetical 5-year-old is there, surely they would have found him by now. He should be part of this lawsuit presumably. We haven't found him, and there's reasons for that. There's reasons for that. Again, most of these kids, for example, are here with parents, so they ride on their claims. Those kids are not viable or suitable. Realistically, how can this, what seems to be needed here is a Gideon decision for children in the immigration situation. Can the government cooperate with these counsel or others to pick a sample case, have them go through the system so that the issue can be raised? It goes through the BIA. It comes to the Court of Appeal, and then the issue gets litigated. Then you get all these issues before it. Then there's a decision that's made. Can the government cooperate in that way, or do you have instructions to basically leave that alone and don't touch it? I will concede I have not been given instructions one way or the other on that issue, so if I were to represent on behalf of the entire United States government on that point, I think someone's going to be giving me a call as soon as this argument is over. So I would probably don't ask you that. I understand you don't have any authority. Let me ask you about an argument that opposing counsel made. They said that it would be impossible to litigate this the way the statute says to litigate it. For them to represent a child or not represent a child, but be a next friend or amicus or something like that, in a removal proceeding, go through the removal proceeding, and then petition the Court of Appeals and raise the very same issue, right to counsel at government expense in removal proceedings for children. They say that's impossible and give various reasons why not. Is it possible, and if so, why are their reasons for impossibility mistaken? Let me just be clear what you're asking, Judge Kleinfeld. If they were to represent them themselves, are impossible for a non-lawyer? Because if you were to decide— I think the answer to that has to be what you always say in a deposition. When the witness asks you an either-or question, you say both. Okay. Well, I'm glad you answered the question that way. I mean, if you were to issue a ruling the government has asked you to issue, simply channel these through the appropriate administrative mechanism to come to the Court of Appeals. Their whole issue here is that they haven't gone through a removal proceeding, and the statute says the only way you can get a legal decision from a court is to go through the removal proceeding and a petition for review to a circuit court. So my question is, why can't they do that? And they said, we can't do it because A, B, and C, and I want to know if that's so. Their argument, if I understand correctly, boils down to this. If we represent them in immigration proceedings, we can't raise this Rights to Counsel Act government expense claim. And the government disagrees with that. Like, they can raise it. In the hypothetical you raised when you were discussing this with plaintiff's counsel, Judge McEwen, why can't someone just say, I want a counsel, I don't want to pay for it? It's preserved. It's in the record. It's there. And they can do it. An extra friend can do it. The IJ can ask about it. But if you were to decide the jurisdictional question here today in the way the government is asking you to do, that's exactly what they would do. That's what I would do. I would go represent these individuals in removal proceedings, and I would say we want an attorney at government expense. And now it's in the record. Now it's preserved, and the system can work as it's supposed to. And so we just fundamentally disagree that that cannot be raised and preserved. It can be exhausted. It can be preserved. It has happened. In fact, before I came up here, I'd been looking through my records. We have an immigration board decision where an individual, now mind you, he was not a child. He was an adult. He said, I want counsel. I want government-appointed counsel. The board addressed that issue. They didn't reach the merits of it. They said, well, you waived it, and you did that knowingly and intelligently. But they addressed the issue. That's the catch-22 of, you know, if you don't have a lawyer, you waive the issue, therefore you can't pursue it. And the other catch-22 is, well, you can't get a lawyer because we don't have a ruling that the government is required to give you one. So that's what we call out of luck, right? Well, I think what you'd have to find in order for our position to be incorrect or inconsistent is that raising the claim to the board, I want counsel at government expense, cannot happen. And once that happens, it cannot come to this court. So if you think this court would say, sorry, that's not before us, it wasn't exhausted, there may be something to that. But that's not the case. You can raise it to the board. The board will say as follows. We don't have institutional authority to decide it. Then cases like Elgin, Shalala, Thunder Bay, can say, well, that's all well and good. But we can because we're an Article III court in the first instance that can decide that question. And just to this last point on the record issue, which was the basis of the district court's decision, this court can, if it needs factual development in the rare case, and I'm quoting here to Morales' Cierto again, where this panel of this court said, if we need record development, we send it back to the board. And if we need district court capabilities under the Hobbs Act, we can send it to district court. So I'm quoting here, in the rare circumstance, end quote, where that is an issue, this panel can do that. Any panel of the Ninth Circuit can do that. So there will be a record one way or the other when this case comes to you. Thank you. Thank you. I'd like to thank all counsel for your argument, also for the very excellent briefing. As all the panel has indicated, it's a very frustrating and difficult situation with unaccompanied minors who are trying to proceed through a labyrinthine system without a lawyer. We, of course, have to decide these difficult statutory and legal issues. We're not a policy body. On the other hand, nothing precludes the parties from talking about solutions while the court considers its decision and writes its opinion. So with that, the case of J.E.F.M. v. Lynch is submitted, and we're adjourned for the morning. All rise.
judges: Kleinfeld, McKeown, M. Smith